A. W. Cooper, Appellee, v. James Horridge et al., Appellants.

**BOUNDARIES:** Government Monuments—Effect.  Principle reaffirmed
that duly identified government survey monuments are controlling,
and will override every call of the field notes for measurements.
(See Book of Anno., Vol. 1, Sec. 12309, Anno. 1 *et seq.*)

Headnote 1:  9 C. J. p. 164.

*Appeal from Appanoose District Court.*—E. S. Wells, Judge.

OCTOBER 20, 1925.

THIS is a controversy between adjoining landowners over
their partition line.  The plaintiff brings this suit to enjoin the
defendants from cutting down his fence, which he has heretofore
constructed upon the proper line as he claims it to be.  The
defendants answer: (1) a general denial; (2) acquiescence for
more than ten years in another line, and adverse possession for
such time by the defendants; (3) that the true government line
is situated about midway between the plaintiff's present line
fence and the former line, which had been long acquiesced in.
The defendants prayed by cross-bill that the old line long ac-
quiesced in be established; or in the alternative that the true
government line be established, which is from six to eight feet
distant from the line as claimed by the plaintiff.  The decree
established the true government line as being on the line of
plaintiff's fence.  The defendants have appealed.—*Affirmed.*

*C. H. Elgin*, for appellants.

*R. W. Smith* and *Fee & Smith*, for appellee.

EVANS, J.—The defendants are husband and wife.  They
are the owners of 120 acres of land, consisting of the E½ of the
NE¼ of a certain Section 18, and the SE¼ of the SE¼ of Sec-
tion 7 of the same township.  The following plat will indicate
the location of the lands involved in this controversy:

It will be noted that the Horridge land lies in a "string" of three "forties," extending from south to north. It is the west line of this farm that is in controversy. The plaintiff is the owner of 15 acres which adjoin the Horridge land on the west, at its south end. This controversy concerns the south end of the Horridges' west line. There had been previous litigation over the north end of the Horridge line, between the Horridges and Carter, the adjoining landowner on the west. That litigation has figured to some extent in the present trial. The line now claimed by the plaintiff lies about 14 feet east of a former fence which had been maintained for many years. The defendants claim the benefit of this line by long acquiescence and adverse possession. We think this plea is not fairly established by the evidence. It seems to have been pretty generally recognized by the successive landowners for many years, that such fence and a certain hedge up to which the respective parties occupied were not the true government lines. There seem to have been also quite a general expectation and purpose sometime in the future to obtain an official survey, and to ascertain the true government line, and to conform thereto. The conflicting evidence is directed largely to the question of location of the true government line. The contention of the defendants is that such true line lies from six to eight feet west of the line adopted by the plaintiff and fixed by the trial court: that is to say, that it is eight feet at the north and six feet at the south end. The ques-

tion thus involved is one of fact. It will not be practicable to go into a detailed discussion of the voluminous evidence. We see no practical purpose to be served thereby. If such course were desirable, it has been rendered quite impracticable by the state of the record. We are confronted with two abstracts, purporting to cover the entire record, which are contradictory to each other. We are therefore driven to the transcript for a reading of the evidence.

The measurement relied on by the plaintiff was made by the county engineer, Davis. Its correctness depends upon the true location of the government corner at the northeast corner of Section 18, this being the common corner of Sections 18, 7, 8, and 17. A stone at such corner was accepted by the engineer as the true government corner. The engineer for the defendants rejected this stone, not because any other monument was found, but because its location did not check exactly with the government measurements from another government corner. This engineer took the position that such stone was a few feet too far east, and he located the government corner a few feet west therefrom. He does not claim to have found any monument or other outward sign of such location, but he has relied wholly upon his measurements from other corners, in order to reject this monument. On the other hand, it was contended by the county engineer that the stone in question was the original stone placed by the government surveyors, and was clearly a government monument. Needless to say that the government monument, if identified, is controlling, and will even override every call of the field notes for measurements. We are satisfied that this corner was properly identified as a government corner. On that basis there is no dispute as to the measurements from that corner to the west line of the Horridge farm. Sufficient other government corners were identified to fix the line. No dispute is presented over other monuments.

It appears that the Davis survey was made in the spring of 1920; that the progress of it and the result of it were known at the time by all the adjoining landowners, with apparent acquiescence. The plaintiff immediately built a fence along the line thus established. It was an expensive fence of woven wire, and was hog-tight. It is his contention that he did this after

being assured by the defendants that they acquiesced in the survey. Carter also, who was the adjoining landowner north of the plaintiff and west of the defendants, built a fence likewise. No protest was made by the defendants as to either of these fences for nearly one year thereafter. After nearly one year of acquiescence, they cut their neighbor's fences and protested the line. Suits were brought by the plaintiffs respectively against them to enjoin them. The Carter suit was first tried and adjudicated in favor of Carter. The decree in the case at bar, among other findings, found that the Carter suit was an adjudication against the defendants of the true location of their west line. Complaint is especially directed by the appellants against this feature of the decree. The question thus raised, however, is not a very important one to the defendants. If it were eliminated from the decree, it could not change the result. Of course the plaintiff herein was not a party to the Carter decree. In that sense the decree was not an adjudication which could bind him. In view of the fact, however, that the true location of the northeast corner of Section 18 was determinative of the defendants' west line, both as to Carter and as to Cooper, its establishment by the decree might create a species of estoppel against the defendants as to such location. From the very nature of the case, they could not have one "northeast corner of Section 18" for Carter, and another "northeast corner of Section 18" for Cooper.

Upon a careful reading of the entire record, we reach the conclusion that the district court properly sustained the line laid by the county engineer, Davis. We have no occasion to consider, therefore, what, if any, was the legal effect of the adjudication in the Carter case, upon the present litigation.

For the reason indicated, the decree of the district court is affirmed.—*Affirmed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.